IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

UNITED STATES OF AMERICA,     §
    §
v.     §     C.A. NO. C-11-318
    §
RONALD S. HERNDON, ET AL.     §

## MEMORANDUM AND RECOMMENDATION TO
## GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, the United States of America, filed this action seeking to hold Defendants

Ronald S. Herndon, Herndon Marine Products, Inc., Gulf King Services, Inc., and Sea Services,

Inc. liable for the unpaid balance of two promissory notes.  Pending is the Government's motion

for summary judgment.  (D.E. 19).  Defendants submitted a response brief opposing dismissal.

(D.E. 26).  The Government filed a reply brief, (D.E. 27), as well as a supplemental brief.  (D.E.

29).  For the reasons stated herein, it is respectfully recommended that this motion for summary

judgment be granted as to the claims against Defendants Herndon Marine Products, Gulf King

Services, and Sea Services.[1]

## I.  JURISDICTION

This Court has jurisdiction over civil actions commenced by the United States pursuant

to 28 U.S.C. § 1345.

## II.  FACTUAL BACKGROUND

Pursuant to the provisions of the Merchant Marine Act of 1936, 46 U.S.C. §§ 53701 et

seq., Defendant Herndon signed a promissory note made payable to the United States in his

---

[1] Plaintiff's claims against Defendant Herndon are stayed pursuant to 11 U.S.C. § 362.

capacity as President of Defendant Herndon Marine Products on October 26, 1993.[2]  (D.E. 19-1, at 1; D.E. 19-2, at 1, 4).  This note had a principal amount of $10 million dollars and was to be repaid with interest over fourteen years, with the note maturing on October 26, 2007.  (D.E. 19-2, at 1).  Repayment of the note was secured by a deed of trust on approximately eighty-three acres of land in Nueces County, Texas, ("Ranch"), as well as an unconditional personal guaranty agreement signed by Mr. Herndon.  (D.E. 19-3; D.E. 19-5).  Other secured assets included a shrimp processing plant located in Aransas County and San Patricio County ("Shrimp Plant"), the equipment in the Shrimp Plant, a pledge on a tax-deferred Capital Construction Fund, and preferred mortgages on twenty-nine fishing vessels owned by Herndon Marine Products.  (D.E. 19-1, at 1-2).

On July 26, 1994, Herndon Marine Products borrowed another $2.4 million dollars from the United States.  (D.E. 19-1, at 2; D.E. 19-7, at 1).  Again, Mr. Herndon signed a promissory note that was to be repaid over fourteen years, with a maturation date of July 26, 2008.[3]  (D.E. 19-7, at 1, 4).  Repayment of this note was partially secured by another deed of trust on the Ranch property and a second unconditional personal guaranty agreement from Mr. Herndon. (D.E. 19-8; D.E. 19-10).  The Government also took secondary positions on almost all of the vessel collateral and obtained the assignment of all Herndon Marine Products corporate stock to the National Marine Fisheries Service ("NMFS").  (D.E. 19-1, at 2).  On April 24, 1996, additional deeds of trust pledged around seventeen acres of Nueces County waterfront property ("Island") as security for the loans.  (D.E. 19-12; D.E. 19-13).

---

[2] Records kept by the National Oceanic and Atmospheric Administration ("NOAA") designate this note "OGRG-007."  (D.E. 19-2, at 1; D.E. 19-19).

[3] Records kept by the NOAA designate this note "OGRG-008."  (D.E. 19-7, at 1; D.E. 19-20).

An inter-creditor agreement was executed on May 16, 1997 in order to ensure that Herndon Marine Products could meet its debt obligations.  (D.E. 19-1, at 2-3; D.E. 19-14).  The parties to this agreement included a number of Herndon Marine Products' affiliated corporations, such as Defendant Gulf King Services, Defendant Sea Services, and individually incorporated fishing vessels or second-tier subsidiaries ("vessel corporations"), as well as Herndon Marine Products' creditors, consisting of the NMFS, the Small Business Administration ("SBA"), and Foothill Capital Corporation ("Foothill").  (D.E. 19-14, at 1).  The agreement resulted in the rearrangement of Herndon Marine Products' and Gulf King Services' capital structures, with the latter's assumption of $14 million of Herndon Marine Products' debt, modification of the claims as between Herndon Marine Products' creditors, and provided for the distribution of an additional $1.1 million advance to Gulf King Services and the vessel corporations.  Id. at 3-7. Pursuant to the inter-creditor agreement, Gulf King Services and Sea Services executed an unconditional guaranty agreement on June 2, 1997 with respect to Herndon Marine Products' obligations to the United States.  (D.E. 19-15).  In addition, Gulf King Services executed an assumption of debt instrument further promising to pay Herndon Marine Products' debts on June 4, 1997.  (D.E. 19-16).

The SBA eventually transferred its interests and rights against Defendants to NMFS for a $300,000 payment on May 11, 2000.  (D.E. 19-18).  Foothill also released its mortgages after receiving a payoff.  (D.E. 19-1, at 3).  Prior to the maturation of the promissory notes, the NMFS acquired the Shrimp Plant through a non-judicial foreclosure sale and sold the property at an auction for $315,000.  Id. at 4.  After sales expenses and commissions in the amount of $20,438.75 were deducted, the remaining $294,561.25 in proceeds was applied to the debt on the

$10 million note.  Id.; (D.E. 19-19, at 1).

Ultimately, Defendants failed to pay the unpaid balances due on the two promissory notes at maturity.  (D.E. 19-1, at 4).  Although Herndon Marine Products and Gulf King Services later attempted to satisfy their obligations to the United States by paying a portion of the debt by March 24, 2010, they were still unable to make any payment.  Id.  On May 6, 2011, the government demanded payment from Defendants and provided written notice that it had posted the Ranch and Island properties for non-judicial foreclosure sales scheduled to occur on June 7, 2011.  Id.  Defendants failed to pay off the unpaid balances prior to that time, id.; (D.E. 19-19; D.E. 19-20), and both properties were sold at foreclosure.  (D.E. 19-1, at 4).  The NMFS purchased the Ranch property for $150,000, and the proceeds were credited to the debt associated with the $10 million note.  Id. at 4-5; (D.E. 19-19, at 1).  HCDM Investments, Ltd. purchased the Island property for $650,000, and a Substitute Trustee's Foreclosure Sale Deed was recorded as document number 2011019437 in Nueces County's official records.  (D.E. 19-1, at 5).  After deduction of costs associated with the sale, the remaining amount of $630,500 was applied to the debt on the $10 million note.  Id.; (D.E. 19-19, at 1).  To date, the Government remains the holder of these promissory notes.  (D.E. 19-1, at 5).

### III.  PROCEDURAL BACKGROUND

On October 3, 2011, the Government instituted this action to recover the amounts due from Defendants.  (D.E. 1).  It filed this motion for summary judgment on March 22, 2012, seeking judgment as to all or part of its claims.  (D.E. 19, at 6).  As of March 23, 2012, the Government maintains that it is owed $32,521,726.86 due on the $10 million note and $12,092,746.27 due on the $2.4 million note, with interest accruing daily on both obligations.

(D.E. 19, at 4-5).  Defendants filed an answer on April 25, 2012, admitting that Herndon Marine Products signed the two promissory notes and acknowledging the deed of trust on the Island to secure the $10 million note.  (D.E. 24, at 2-3).  On May 4, 2012, they also filed a response brief opposing the entry of summary judgment and, in the alternative, moved for a continuance.  (D.E. 26).  The government submitted a reply brief on May 11, 2012, (D.E. 27), as well as a supplemental brief on May 25, 2012 in support of its motion.  (D.E. 29).

On June 19, 2012, Mr. Herndon provided notice to the Court that he was filing a voluntary petition for bankruptcy relief.  (D.E. 43).  As a result, proceedings against him have been stayed.  Litigation continues, however, against the remaining Defendants to this action.

## IV.  DISCUSSION

The Government insists that it is entitled to summary judgment against Defendants for their failure to fulfill their obligations under the two promissory notes.  However, Defendants dispute the absence of genuine issues of material fact and protest the admissibility of the summary judgment evidence submitted by the Government.  They also raise an accord and satisfaction defense, and they seek the protection of the Texas Deficiency Judgment Act.  In the alternative, they urge the Court to grant a continuance, which would afford them additional time to conduct the appropriate discovery.

## A.    The Legal Standard For A Summary Judgment Motion.

Summary judgment is appropriate when there is no disputed issue of material fact, and one party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Courts must consider the record as a whole, including all pleadings, depositions, affidavits, interrogatories and admissions on file, in the light most favorable to the non-movant.  Caboni v. Gen. Motors Corp.,

278 F.3d 448, 451 (5th Cir. 2002) (citations omitted).  With respect to debt collection actions, the Fifth Circuit has noted that "suits on promissory notes provide fit grist for the summary judgment mill."  F.D.I.C. v. Cardinal Oil Well Servicing Co., 837 F.2d 1369, 1371 (5th Cir. 1988) (citation omitted).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact and informing the court of the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which support its contention.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 913 (5th Cir. 1992) (citations omitted).  Any controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party.  See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988) (citation omitted).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine issue of material fact remains for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Fields v. City of S. Houston, Tex., 922 F.2d 1183, 1187 (5th Cir. 1991) (citation omitted).  The non-movant cannot merely rest on the allegations of the pleadings, but must establish that there are material controverted facts in order to preclude summary judgment.  Fed. R. Civ. P. 56(c)(1); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986) (citation omitted).  Summary judgment is proper if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof.  Celotex, 477 U.S. at 322-23; ContiCommodity Servs., Inc.

v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995) (citations omitted).

**B.    Defendants' Evidentiary Objections.**

The Government's summary judgment motion relies in part upon the declarations of Timothy Ward, a loan specialist employed by the United States Department of Commerce.  (D.E. 19-1).  Defendants generally contest the admissibility of this evidence and urge denial of summary judgment on the basis that the Government cannot demonstrate that there are no genuine issues of material fact.  (D.E. 26, at 6).  Specifically, they object that Mr. Ward lacks personal knowledge of the facts, and they also contend that his declarations are hearsay, conclusory, speculative, and lack proper foundation.  Id. at 3-4.

Rule 56(c) of the Federal Rules of Civil Procedure governs evidentiary matters on a motion for summary judgment:

> (1) *Supporting Factual Positions.*  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A)    citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B)    showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> (2) *Objection That a Fact Is Not Supported by Admissible Evidence.*  A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> > * * *
>
> (4) *Affidavits or Declarations.*  An affidavit or declaration used to support or oppose a motion must be made on personal knowledge,

7

set out facts that would be admissible in evidence, and show that
the affiant or declarant is competent to testify on the matters stated.

Portions of affidavits or declarations that fail to conform to Rule 56(c) are disregarded when considering the summary judgment; however, admissible portions may still be considered.  See Lee v. Nat'l Life Assurance Co., 632 F.2d 524, 529 (5th Cir. 1980) ("The rule is settled that on a motion for summary judgment a court will disregard only the inadmissible portions of a challenged affidavit ordered in support of or opposition to the motion and will consider the admissible portions in determining whether to grant or deny the motion.") (collecting cases).

### 1.    Defendants' objections to Mr. Ward's declaration on the grounds of personal knowledge and hearsay should be overruled.

A declarant's personal knowledge over matters that reasonably fall within his or her sphere of responsibility can be inferred.  See DIRECTV, Inc. v. Budden, 420 F.3d 521, 530 (5th Cir. 2000) (affiant's position within a corporation permitted him to testify from personal knowledge about the corporation's policies in his area of responsibility).  The Fifth Circuit has explained that "an affidavit can adequately support a motion for summary judgment when the affiant's personal knowledge is based on a review of her employer's business records and the affiant's position with the employer renders her competent to testify on the particular issue which the affidavit concerns."  Carson v. Perry, 91 F.3d 138, 1996 WL 400122, at *1 (5th Cir. June 6, 1996) (per curiam) (unpublished) (citations omitted).  In the context of suits to enforce promissory notes, the Fifth Circuit has permitted the use of declarations by individuals who lack "precise personal knowledge [about a] particular note" in the absence of any "legitimate fear" concerning the declaration's veracity.  Resolution Trust Corp. v. Camp, 965 F.2d 25, 29 (5th Cir. 1992); see also Dalton v. F.D.I.C., 987 F.2d 1216, 1223 (5th Cir. 1993) (holding that an FDIC

account officer's affidavit was not defective solely because the officer did not have personal knowledge of the loan transaction when it occurred) (citing Camp); F.D.I.C. v. Stringer, 46 F.3d 66, 1995 WL 29283, at *2-3 (5th Cir. Jan. 13, 1995) (unpublished) (affidavit of credit specialist could be used as summary judgment evidence without precise personal knowledge of the note at the time it was made because there was no reason to reject the affidavit) (citing Camp; Dalton).

Mr. Ward is a loan specialist employed by the Government agencies involved in this litigation.  (D.E. 19-1, at 1).  His duties as loan specialist include "analyzing new loans, collecting existing loans, and providing litigation support to the United States Department of Justice in the foreclosure process."  Id.  He has also testified that he provided these services for the loans underlying this action.  Id.  Given Mr. Ward's position and sphere of responsibility, he possesses sufficient personal knowledge to speak about the loans at issue.

Although Defendants mount a broad attack on Mr. Ward's "personal knowledge of the transactions, notes and obligations at issue or the servicing of the transactions, notes and obligations," (D.E. 26, at 3), they have provided nothing approaching a "legitimate fear" that his testimony is somehow untrue or unreliable.  Indeed, much of Mr. Ward's declaration merely summarizes the contents of the uncontested loan documents attached to the summary judgment motion.  More significantly, Defendants have failed to contest his declaration with their own competent summary judgment evidence to create a genuine fact issue.  For example, they did not submit affidavits asserting that they successfully repaid their debts, that their properties were not in fact sold at a foreclosure auction for an amount less than what they owed to the Government, or that the amount the Government seeks to recover is incorrect.  Accordingly, it is respectfully recommended that their objection based on Mr. Ward's lack of personal knowledge be overruled.

Furthermore, because Defendants similarly premise their hearsay objection on Mr. Ward's alleged lack of "specific, personal knowledge," id. at 4, it is respectfully recommended that this objection be overruled as well.[4]

**2.   Mr. Ward's representations of fact are competent summary judgment evidence.**

In accordance with Rule 56(c)(2) of the Federal Rules of Civil Procedure, the Fifth Circuit has recognized that speculation and unsubstantiated assertions are not competent summary judgment evidence.  See, e.g., Forsynth v. Barr, 19 F.3d 1527, 1533 (5th Cir. 1994) ("unsubstantiated assertions are not summary judgment evidence"); TIG Ins. Co. v. Sedgwick James of Washington, 276 F.3d 754, 759 (5th Cir. 2002) ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.") (citation omitted).  However, evidence that can be presented in an admissible form at trial may be submitted in an inadmissible form at the summary judgment stage.  Mackey v. Owens, 182 F.3d 915, 1999 WL 423077, at *1 (5th Cir. 1999) (per curiam) (unpublished) (citing McMillan v. Johnson, 88 F.3d 1573, 1584 (11th Cir. 1996)).

Defendants object that portions of Mr. Ward's declaration contains conclusory assertions concerning the enforceability of the promissory notes as well as inadmissible speculation regarding the purpose and intent of the contracting parties.  (D.E. 26, at 4).  The bulk of these objections should not be entertained.  Defendants have already admitted that Herndon Marine Products signed the promissory notes referenced by Mr. Ward, (D.E. 24, at 2), thus foreclosing

---

[4] In the alternative, Mr. Ward's summary of Defendants' debt obligations is not hearsay under the business records exception.  See United States v. Lawrence, 276 F.3d 193, 196-97 (5th Cir. 2001) (loan analyst with the Department of Education could give testimony concerning the defendant's debt).

any challenge to the existence of these agreements as a factual matter.  To the extent they object

to Mr. Ward's account of their other interactions with the Government, they have failed to

explain the basis for their objections.  It is simply not clear why Defendants believe that these

declarations of fact could not be presented in an admissible form at trial.  The mere fact that they

may disagree with Mr. Ward does not establish a basis for striking his declarations from the

record.  Defendants are again admonished that if they intend to counter the Government's

representations so as to create a genuine issue of material fact, they should submit admissible

evidence of their own.

Defendant's evidentiary objections are warranted only to the extent that Mr. Ward's

declarations contain conclusions of law.  Therefore, it is respectfully recommended that only Mr.

Ward's representations of fact be considered competent summary judgment evidence.

**C.     There Are No Genuine Issues Of Material Fact Impeding The Government's Right To Recover Against Defendants.**

Where the United States is party to a contract, federal law may be implicated in any

subsequent litigation arising from that contract.  See Clearfield Trust Co. v. United States, 318

U.S. 363, 366 (1943) (addressing commercial paper).  If federal law applies but no specific

federal statute speaks to the matter, federal courts are directed "to fill the interstices of federal

legislation 'according to their own standards.'"  United States v. Kimbell Foods, Inc., 440 U.S.

715, 727 (1979) (quoting Clearfield Trust, 318 U.S. at 367).  Nevertheless, the Supreme Court

has also provided that "matters left unaddressed in such a [federal law] scheme are presumably

left subject to the disposition provided by state law."  O'Melveny & Myers v. F.D.I.C., 512 U.S.

79, 85 (1994) (citations omitted).  Similarly, "when there is little need for a nationally uniform

body of law, state law may be incorporated as the federal rule of decision."  Kimbell Foods, 440

U.S. at 728 (citation omitted).

      **1.**      **The Government is entitled to recover against Herndon Marine Products on the promissory notes.**

Following Clearfield Trust, the Fifth Circuit has specifically determined that federal law governs federal promissory notes secured by deeds of trust on real property.  Farmers Home Admin. v. Muirhead, 42 F.3d 964, 965 (5th Cir. 1995).  To recover on a promissory note, the Government must show (1) the defendants signed it, (2) the Government is the present owner or holder of the note, and (3) the note is in default.  F.D.I.C. v. Selaiden Builders, Inc., 973 F.2d 1249, 1254 (5th Cir. 1992) (citations omitted); accord United States v. Keathley, No. C-11-107, 2011 WL 2600552, at *3 (S.D. Tex. June 29, 2011) (unpublished) (applying same factors for federal student debt collection action) (citing Lawrence, 276 F.3d at 197); United States v. Hayden, No. 3-86-1606-G, 1989 WL 206493, at *2 (N.D. Tex. Oct. 31, 1989) (unpublished) (using essentially the same factors after applying Clearfield Trust).

The record establishes that the Government has met its summary judgment burden and may recover on the two promissory notes giving rise to this action.  Plaintiff has shown that Mr. Herndon, acting as President of Herndon Marine Products, signed the notes.  (D.E. 19-2, at 4; D.E. 19-7, at 4).  Furthermore, the Government demonstrated it is the current owner of these two notes.  (D.E. 19-1, at 5; D.E. 19-2; D.E. 19-7).  Finally, there is undisputed summary judgment evidence indicating that Herndon Marine Products defaulted on its obligations.  In addition to Mr. Ward's declaration asserting that Herndon Marine Products failed to pay the unpaid balance at the maturity of the notes, (D.E. 19-1, at 4), the Government's accounting records show that Herndon Marine Products is currently millions of dollars in arrears on both loans.  (D.E. 19-19; D.E. 19-20).

Defendants did not at any point contest the Government's evidence by asserting countervailing facts supported by their own evidence.  To the contrary, they have admitted Herndon Marine Products signed the notes at issue, and they also admit that both Herndon Marine Products and Mr. Herndon signed deeds of trust to secure at least one of those notes. (D.E. 24, at 2).  Additionally, Defendants have not denied the Government's ownership of the notes or Herndon Marine Products' failure to pay the remaining balances; and even if they did, nothing in the record would support such conclusory contentions.  Therefore, they have failed to raise a genuine issue of material fact sufficient to bar entry of summary judgment on this issue. See Cotroneo v. Shaw Env't & Infrastructure, Inc., 639 F.3d 186, 191-92 (5th Cir. 2011) ("Thus, to defeat a motion for summary judgment, the nonmoving party must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial'") (citations omitted)). Accordingly, it is respectfully recommended that the Government has established that it is entitled to recover against Herndon Marine Products on the defaulted promissory notes.

2.     **The Government may recover against Gulf King Services and Sea Services on the guaranty agreement.**

Federal law also applies to guaranty agreements entered into by the United States.  See United States v. Little Joe Trawlers, Inc., 776 F.2d 1249, 1251 n.2 (5th Cir. 1985) ("In this circuit, relying on *Clearfield Trust*, we have ruled that federal law governs a guaranty contract entered into by the United States.") (citing First Nat'l Bank, Henrietta v. Small Bus. Admin., 429 F.2d 280, 286-87 (5th Cir. 1970)).  The Fifth Circuit permits the Government to recover against guarantors as allowed "by the express terms of the [guaranty] agreement."  United States v. Outriggers, Inc., 549 F.2d 337, 339 (5th Cir. 1977) (per curiam).

The Government has demonstrated that the terms of the guaranty agreement permit recovery against Gulf King Services and Sea Services. Mr. Ward's declaration and the attached "UNCONDITIONAL GUARANTY AGREEMENT" signed by both Gulf King Services and Sea Services suffice to establish both the existence of the contract and the Government's possession over it. (D.E. 19-1, at 5; D.E. 19-15). The guaranty agreement requires both Gulf King Services and Sea Services to "provid[e] their unconditional guarantee of the remaining balances of [Herndon Marine Products'] Guaranteed Notes and Notes to the Secretary [of Commerce], and all other amounts owed the Secretary, including, but not limited to, past, present, and future advances." (D.E. 19-15, at 1). In addition, the agreement requires Gulf King Services and Sea Services to "unconditionally guarantee that [Herndon Marine Products] will promptly and punctually pay all other sums payable under either the Guaranteed Notes, the Notes or the Mortgages." Id. at 2. Given that Herndon Marine Products has defaulted on the two promissory notes, Gulf King Services and Sea Services must now pay in accordance with the guaranty agreement. To date, however, no payment has been received. (D.E. 19-1, at 5).

Again, Defendants have failed to contradict the Government's summary judgment evidence in any manner. Because they have not established the existence of a genuine issue of material fact, it is respectfully recommended that the Government has established its right to a judgment against Gulf King Services and Sea Services on the guaranty agreement.

### 3.     No evidence supports the defense of accord and satisfaction.

Defendants raise the defense of accord and satisfaction, arguing that the original loan and guaranty agreements were superseded and are no longer effective. (D.E. 26, at 7). In support, they reference Mr. Ward's statement that "[o]n or about June 16, 2009 Herndon Marine Products

14

and Gulf King Services agreed to pay a sum certain to the United States ... on or before March 24, 2010, in an effort to satisfy the indebtedness due to the United States ..., but [Herndon Marine Products] and [Gulf King Services] failed to make any payment."  (D.E. 19-1, at 4).

To the extent that Mr. Ward's testimony can be construed to suggest the existence of an accord agreement, it simultaneously demonstrates that there was no satisfaction of the accord. Under general principles of contract law, "a contract in the nature of accord and satisfaction does not discharge the original obligation <u>unless and until the accord is followed by satisfaction therein provided</u>, and if the debtor fails to carry out the accord the creditor can enforce either the original obligation or the new accord."  <u>American Textile Mach. Corp. v. United States</u>, 220 F.2d 584, 587 (6th Cir. 1955) (emphasis added); <u>see</u> <u>also</u> <u>Priebe & Sons v. United States</u>, 332 U.S. 407, 411 (1947) ("It is customary, where Congress has not adopted a different standard, to apply to the construction of Government contracts the principles of general contract law.") (citing <u>United States v. Standard Rice Co.</u>, 323 U.S. 106, 111 (1944)).  Because Mr. Ward has affirmatively denied that payment was made pursuant to any potential accord agreement, and because Defendants have not submitted any evidence indicating otherwise, it is respectfully recommended that this defense provides no bar to the entry of summary judgment.

**4.     The Texas Deficiency Judgment Act does not apply.**

Next, Defendants argue that the Government failed to conclusively demonstrate compliance with the Texas Deficiency Judgment Act.  (D.E. 26, at 8-9).  The Fifth Circuit's holdings in <u>Muirhead</u> and <u>Henrietta</u>, however, have foreclosed the application of state law in this action.  Regardless, even if the Texas Deficiency Judgment Act were used as the governing rule of law in this case, Defendants would still be unable to show that summary judgment should not

be granted.

The Texas Deficiency Judgment Act generally allows the owner whose property is being

foreclosed to obtain a fair market value offset against the deficiency in lieu of the sale price:

> (a) If the price at which real property is sold at a foreclosure sale ...
> is less than the unpaid balance of the indebtedness secured by the
> real property, resulting in a deficiency, any action brought to
> recover the deficiency must be brought within two years of the
> foreclosure sale and is governed by this section.
>
> (b) Any person against whom such a recovery is sought by motion
> may request that the court in which the action is pending determine
> the fair market value of the real property as of the date of the
> foreclosure sale....
>
> (c) If the court determines that the fair market value is greater than
> the sale price of the real property at the foreclosure sale, the
> persons against whom recovery of the deficiency is sought are
> entitled to an offset against the deficiency in the amount by which
> the fair market value, less the amount of any claim, indebtedness,
> or obligation of any kind that is secured by a lien or encumbrance
> on the real property that was not extinguished by the foreclosure,
> exceeds the sale price.  If no party requests the determination of
> fair market value or if such a request is made and no competent
> evidence of fair market value is introduced, the sale price at the
> foreclosure sale shall be used to compute the deficiency.

Tex. Prop. Code § 51.003.  Defendants point out that the Government has not provided any

evidence revealing the fair market value of the Ranch and Island properties, thereby making it

impossible to determine whether the deficiency calculation used the appropriate offset.  (D.E. 26,

at 9).

The Government counters that Defendants waived the protection of the statute when they

signed the guaranty agreements.  The Fifth Circuit has recognized that parties can waive

application of § 51.003.  See LaSalle Bank Nat'l Ass'n v. Sleutel, 289 F.3d 837, 841-42 (5th Cir.

2002).  The guaranty agreement Gulf King Services and Sea Services signed does contain waiver

16

clauses requiring full payment "regardless of any defenses or rights of set-off or counterclaims which [Herndon Marine Products] may have or assert."  (D.E. 19-15, at 2).  Other courts in this circuit have found similar language to constitute a waiver of § 51.003.  See, e.g., Haggard, 668 F.3d at 202 (guaranty agreement language waiving "any defenses, set-offs or counterclaims" precluded § 51.003 claim); Sleutel, 289 F.3d at 840 (contract language stipulating that "Guarantor expressly waives ... any defense, right of offset or other claim"); Capital One, N.A. v. Jolly, No. H-11-1113, 2011 WL 5290623, at *4 (S.D. Tex. Nov. 2, 2011) (unpublished) (guarantor waived the protection of § 51.003 because by agreeing to "immediately pay the Debt to Lender ... regardless of (a) any defense, right of set-off or counterclaim which any Obligor may have or assert").  Consequently, neither Gulf King Services and Sea Services are entitled to a fair market value offset pursuant to § 51.003.

On the other hand, the Government has not shown that Herndon Marine Products agreed to such a waiver.  Nevertheless, the record does not disclose that Herndon Marine Products, or any other Defendant, ever requested an appraisal pursuant to § 51.003, and they do not make this allegation anywhere in the record.  Because "no party request[ed] the determination of fair market value," the Texas Deficiency Judgment Act requires "the sale price at the foreclosure sale ... be used to compute the deficiency."  Prop. § 51.003(c).  Therefore, it is respectfully recommended that the Texas Deficiency Judgment Act does not foreclose entry of summary judgment.

### 5.    There is no genuine fact dispute about the amount due on the notes.

Defendants also question the Government's calculation of the balance of their debt obligations on the two promissory notes.  (D.E. 26, at 9-12).  It should suffice to observe that the

only evidence concerning the calculation of the promissory note balances consists of Mr. Ward's

testimony based on the attached accounting reports.  (D.E. 19-1, at 5; D.E. 19-19; D.E. 19-20).

If Defendants take issue with the math, they should offer specific objections rather than mere

speculation that the figures might be wrong.  In the absence of any discernable argument

explaining why the calculation of damages is incorrect, it is respectfully recommended that the

Government's accounting records be found dispositive for summary judgment purposes.

**D.     Continuance Is Not Warranted.**

Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, Defendants seek to obtain

more time to conduct discovery.  (D.E. 26, at 10).  Claiming that "this litigation is still in its

infancy," they complain they have not had the opportunity to depose fact witnesses or verify the

Government's calculation of its claim for damages.  Id. at 10-11.  They believe more time will

allow them to reveal genuine, material fact issues concerning the Government's calculation of

interest, the application of offsets and credits, compliance with the Texas Deficiency Judgment

Act, whether they can establish an accord and satisfaction defense, as well as various other

affirmative defenses.  Id. at 11-12.

It would be preposterous to consider this case one that is still "in its infancy."  This

action was commenced over ten months ago, and it has been about seven months between the

time Defendants were served with the complaint and the date they filed their summary judgment

response brief.  (D.E. 5, 6, 7, 8, 26).  Moreover, since filing the summary judgment response,

Defendants have not submitted any supplemental affidavits, declarations, or documents to further

support their claims.

It is not entirely clear how Defendants have been spending the last nine months, but

apparently they have not used this time to conduct discovery because the Government has not received any discovery requests from them.  (D.E. 27, at 2).  Their lack of diligence seriously undercuts their ability to credibly ask for more time to mount a legal defense.  More troubling is that Defendants only seem to need what appears to be relatively straightforward information about whether Mr. Herndon, Herndon Marine Products, Gulf King Services, or Sea Services failed to pay the balance of two promissory notes that became due years ago.  Defendants could have testified to this matter in an affidavit or declaration, and if their testimony had created a fact issue, then summary judgment would have been denied.  Yet, no such evidence was attached to their response brief, and they have not established that their failure to present this proof was somehow related to time constraints.

Defendants' need for additional discovery is also questionable.  There has been enough information in the record for them to mathematically deduce whether the Government properly calculated the amount due on the notes since the submission of the summary judgment motion. Furthermore, most of the legal defenses Defendants assert are unavailable as a matter of law based on Clearfield Trust and contractual waiver.  Therefore, additional discovery would have no effect on the outcome.

Finally, Defendants have not supported their motion for continuance with affidavits or declarations as required by Rule 56(d).  Accordingly, it is respectfully recommended that their motion for continuance be denied.

## V.  RECOMMENDATION

Based on the foregoing reasons, it is respectfully recommended that Defendants' motion for continuance be denied, and that the Government's motion for summary judgment, (D.E. 19),

be granted as to Defendants Herndon Marine Products, Gulf King Services, and Sea Services.

Respectfully submitted this 8th day of August 2012.

BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).